UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| TARA A. TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | No. 6:26-CV-43-HAI |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| FRANK J. BISIGNANO, | ) | & ORDER |
| *Commissioner of Social Security*, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

*** *** *** ***

In January 2023, Plaintiff Tara Anita Taylor filed a protective Title II application for disability insurance benefits. *See* D.E. 9 at 125.[1] She alleged disability beginning April 30, 2018, although the alleged onset date was later amended to April 1, 2022. *Id.* The Social Security Administration denied Taylor's application initially and upon reconsideration. *Id.* Then, on September 17, 2024, Administrative Law Judge ("ALJ") Sandra Morales Price conducted a telephonic administrative hearing. The ALJ heard testimony from Taylor (represented by attorneys Tomas C. Newlin III and Charles Haynes with only Haynes appearing at the hearing) and impartial vocational expert ("VE") Edith Edward. *Id.* Taylor was found to not be disabled during the relevant period. *Id.* at 135. The Appeals Council denied review on July 16, 2025. *Id.* at 5.

On September 19, 2025, Taylor (proceeding on her own without a lawyer) brought this action under 42 U.S.C. §§ 405(g) and 1383(c) to obtain judicial review of the ALJ's October 25,

[1] Page-number citations to the administrative record are to the large black page numbers at the bottom of each page. Page-number citations to the parties' briefs refer to the blue page numbers generated by ECF.

2024 decision denying her application. Taylor filed her brief on January 20, 2026, and the Commissioner filed his brief on May 6, 2026. D.E. 11, 18. Taylor filed her *pro se* reply on May 19, 2026. D.E. 19. In August 2026, the matter was referred to the undersigned to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. D.E. 21, 22. The Court, having reviewed the record and for the reasons stated herein, **DENIES** Taylor's request to remand these proceedings.

## I. The ALJ's Decision

Under 20 C.F.R. §§ 404.1520, 416.920, an ALJ conducts a five-step analysis to evaluate a disability claim.[2] The ALJ followed these procedures in this case.

At the first step, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). In this case, the ALJ found that Taylor "has not engaged in substantial gainful activity since April 1, 2022, the amended alleged onset date (20 CFR 404.1571 et seq.)." D.E. 9 at 127.

At the second step, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). In this case, the ALJ found Taylor had the severe impairments of "lumbar disc disease, thoracic disc

[2] The Sixth Circuit summarized this process in *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003):

> To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520. Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry . . . the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.

*Id.* at 474 (internal citations omitted).

disease, cervical disc disease, and obesity (20 CFR 404.1520(c)).” D.E. 9 at 128. Taylor does not argue the ALJ should have identified additional severe impairments.

At the third step, if a claimant’s impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, then she is disabled. 20 C.F.R. § 404.1520(d). The ALJ found Taylor failed to meet this standard. D.E. 9 at 128. Relevant to this appeal, the ALJ considered musculoskeletal impairments under Listing 1.15. *Id.* Taylor does not argue that her impairments meet or equal a listing.

If, as here, a claimant is found non-disabled at step three, the ALJ must determine the claimant’s Residual Functional Capacity (“RFC”), which is her maximum ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. The ALJ found:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can never crawl or climb ladders, ropes, scaffolds; and occasionally crouch, kneel, stoop, and climb ramps/stairs. She can occasionally reach overhead and frequently in any other direction. The claimant can have no exposure to vibrations or hazards such as unprotected heights and operation of heavy machinery with hand/foot controls. She can have occasional exposure to extreme cold.

D.E. 9 at 129. Taylor takes issue with this RFC. D.E. 11.

At the fourth step, if a claimant’s impairments do not prevent her from doing past relevant work (given the ALJ’s assessment of the claimant’s residual functional capacity), she is not disabled. 20 C.F.R. § 404.1520(f). The ALJ found that Taylor had no past relevant work. D.E. 9 at 134.

At the fifth step, if a claimant’s impairments (considering her RFC, age, education, and past work) do not prevent her from doing other work that exists in the national economy, she is not disabled. 20 C.F.R. § 404.1520(g). The ALJ found Taylor was not disabled at this step. D.E.

9 at 134-135. The ALJ asked the vocational expert "whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity." *Id*. at 134. The expert provided a list of jobs including checker I, routing clerk, and paper pattern inspector. *Id*. at 135. Because sufficient work existed in the national economy that Taylor could perform, the ALJ found her "not disabled" as defined by the regulations. *Id*.

## II. Framework for Judicial Review

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). Judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quotes and citations omitted).

In determining the existence of substantial evidence, courts must examine the record as a whole. *Mullen*, 800 F.2d at 545 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). However, courts are not to conduct a *de novo* review, resolve conflicts in evidence, or make credibility determinations. *Id.* (citations omitted); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir.

1988). Rather, if the ALJ's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *see also Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Mullen*, 800 F.2d at 545; *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

Under the current rules, all medical opinions are weighed in light of several factors: supportability, consistency, relationship with the claimant, specialization, and any other relevant factors. 20 C.F.R. § 416.920c(c). Supportability and consistency "are the most important factors" in weighing medical opinions. *Id.* § 416.920c(b)(2).

Disability determinations often hinge on the claimant's credibility. The ALJ must consider statements or reports from the claimant. 20 C.F.R. § 404.1529(a). To determine whether statements of a claimant are credible, the following two-part test is used:

> First, the ALJ will ask whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities.

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citing 20 C.F.R. § 416.929(a)).[3]

It is within the province of the ALJ, rather than the reviewing court, to evaluate the claimant's

---

[3] In 20 C.F.R. § 404.1529, the Social Security Administration informs claimants that, in certain credibility determinations, the following factors should guide the analysis of the agency decision makers:

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1037-38 (6th Cir. 1994).

credibility. *Rogers*, 486 F.3d at 247 (citing *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997); *Crum v. Sullivan*, 921 F.2d 644 (6th Cir. 1990); *Kirk v. Sec'y of Health & Human Servs*., 667 F.2d 524, 538 (6th Cir. 1981)). Even so, the credibility determinations of the ALJ must be reasonable and supported by substantial evidence. *Rogers*, 486 F.3d at 249.

Issues that are adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. *United States v. Kerns*, 9 F.4th 342, 351 (6th Cir. 2021); *Strickland v. City of Detroit*, 995 F.3d 495, 511 (6th Cir. 2021).

Finally, arguments raised for the first time in reply briefs are also deemed waived. *Travelers Prop. Cas. Co. of Am. v. Hillerich & Bradsby Co.*, 598 F.3d 257, 275 (6th Cir. 2010); *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) ("Raising the issue for the first time in a reply brief does not suffice; reply briefs reply to arguments made in the response brief—they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration.").

Courts liberally construe the pleadings of *pro se* claimants and hold their petitions to a less stringent standard than similar pleadings drafted by attorneys. *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999).

## III. Analysis

Taylor's first argument concerns the VE's testimony that a claimant's excessive need for breaks or missing two or more workdays per month would preclude competitive employment. D.E. 11 at 4-6. At the hearing, Taylor's lawyer asked the VE about such scenarios. D.E. 9 at 162-66. Taylor argues the ALJ "failed to incorporate or properly address these limitations." D.E. 11 at 4. Although claimant's counsel asked about these scenarios, the ALJ never found that Taylor would need excessive breaks or days off per month. The VE was speaking in general terms, not

opining on Taylor's own capabilities. *See* D.E. 9 at 162-66. In the Court's experience, vocational experts commonly testify that the need for excessive breaks or multiple days off per month would preclude competitive work. Yet this testimony only becomes relevant for the RFC when the ALJ finds (or the record shows) the claimant's limitations support such a scenario. The ALJ could not be expected to include these limitations in the RFC if she did not find they applied to Taylor. Nor has Taylor identified any medical opinion in the record stating she would need to be off task fifteen minutes per hour or would miss two or more days of work per month.

The VE testified that *if* Taylor had to be off-task fifteen minutes per hour or would miss two or days of work per month, then she could not obtain competitive employment. But the ALJ did not find these needs applicable. The VE's generalized testimony on this subject is no grounds for reversal.

Taylor faults the ALJ for finding her testimony not fully credible. She says, "The ALJ relied on boilerplate credibility language stating that Plaintiff's symptoms were 'not entirely consistent with the medical evidence,' without identifying which allegations were rejected or explaining how the cited evidence undermined Plaintiff's testimony." D.E. 11 at 5.

Here, the ALJ opined, "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." D.E. 9 at 130. This statement follows the ALJ's summary of Taylor's hearing testimony, where Taylor said, among other things, she was

> unable to work due to pain, limited range of motion in her back, high blood pressure, shortness of breath, fatigue, and brain fog. She said she has attended physical therapy, but nothing has helped. She testified she can lift/carry 5-10 pounds, sit 10-15 minutes, and walk 20-30 steps. . . . She said she needs [an assistive device for walking] but does not use or have one. She stated she has arthritis in both hands. She testified when she walks, she is leaned over a bit due

> to spondylosis. She said she is up every hour at night. . . . She testified she has had no surgery, but she needs to have a CT scan to see if she needs surgery. She said she has lost two inches in her height due to the curvature of her spine, and she said she has lost 62 pounds over the past year. She stated she uses heat/ice for pain.

D.E. 9 at 129.

The ALJ subsequently highlighted medical records that in some respects differed from Taylor's account of her limitations. For example, an August 11, 2023 consultive examination found Taylor walked with an abnormal gait pitched slightly forward, but she was not unsteady and did not require an assistive device. D.E. 9 at 131. The same exam found Taylor could stand stably and sit comfortably, though she could not lay flat on her back due to pain. *Id.* The ALJ also noted that state agency medical consultant Dr. Christine Booth found Taylor could lift or carry "20 pounds occasionally, 10 pounds frequently; stand/walk 6 hours; and sit 6 hours in an 8-hour workday." *Id.* at 132. This was less restrictive than Taylor's self-report. The ALJ ultimately imposed a greater level of work restrictions than what was recommended by the state agency medical consultants. *Id.* After further summary of the medical evidence, the ALJ concluded:

> Regarding her musculoskeletal impairments, she does have some limitations stemming from these; however, physical examinations did not show any significant findings aside from some abnormal gait, reduced range of motion, and reported pain when lying flat during testing. X-rays and MRI's do confirm some degenerative changes at multi-levels in the cervical, thoracic, and lumbar spine; however, she has only attended physical therapy, and has not had pain management, injections, or been recommended for surgery. She does not need an assistive device to ambulate, and none has been recommended for her.

D.E. 9 at 133.

The record shows the ALJ took account of Taylor's testimony. But the ALJ, pointing to evidence in the record, concluded that her back and arthritis pain—and related limitations—were not as severe as Taylor portrayed. The ALJ adopted an RFC between what Taylor described and what the state agency consultants suggested. The ALJ's determination regarding Taylor's

credibility, weighed against the administrative record, was properly within the ALJ's zone of choice. This Court cannot legitimately override this credibility finding on appeal.

Taylor argues the ALJ cherry-picked "isolated normal findings" at the expense of records that suggest a finding of disability. D.E. 11 at 5. But the record does not support this characterization. The opinion's thorough discussion of the medical record mentions numerous findings regarding Taylor's musculoskeletal limitations. D.E. 9 at 130-34. And again, the ALJ chose an RFC with musculoskeletal limitations more stringent than what the state agency consultants suggested, yet less stringent that what Taylor described. Given the ALJ included both positive and negative findings within her global evaluation of the record, it cannot be said the ALJ committed a legal error here or rendered an RFC unsupported by substantial evidence.

Taylor argues the ALJ placed too much weight on the fact Taylor did not use an assistive walking device, *e.g.*, a cane or walker. D.E. 11 at 6. Taylor herself agrees that she has used no assistive devices and none has been prescribed. *Id*. Yet the ALJ did not place undue weight on this fact. The ALJ considered diagnoses, medical imaging, examination and treatment notes, and the opinions of the state agency consultants. The opinion amasses a variety of data related to Taylor's musculoskeletal limitations, including her ability to walk and the pain in her back. This includes Taylor's own testimony that "She said she needs [an assistive device] but does not use or have one." D.E. 9 at 129. This is not a case where the ALJ hung her hat on the mere fact the claimant has never used a cane or walker. The lack of an assistive device is but one data point in the ALJ's discussion. The Court here discerns no legal error. And, that the ALJ gave *some* weight to the fact that Taylor walks unassisted does not render the ALJ's opinion unsupported by substantial evidence.

Taylor argues the ALJ failed to develop the record regarding her "documented prior spine surgery." D.E. 11 at 7. In describing Taylor's hearing testimony, the ALJ's opinion states, "She testified she has had no surgery, but she needs to have a CT scan to see if she needs surgery." D.E. 9 at 130. As memorialized in the hearing transcript, the ALJ had asked Taylor, "And you have not required surgery? They haven't talked to you about any type of surgery, right?" *Id.* at 155. Taylor responded, "I have to have a CT scan done because they want more or maybe better imaging of an area to see if surgery is even an option." *Id.*

But Taylor is arguing the ALJ failed to take into account a *prior* surgery. D.E. 11 at 7. Taylor says she "disclosed a history of prior laser spine surgery in response to an MRI questionnaire contained within the medical evidence." *Id.* Taylor faults the ALJ for not asking her about this past surgery or addressing it in the written opinion. *Id.* The ALJ's opinion does note that Taylor has a "history of spine surgery 'unknown level.'" This is consistent with the record, where providers note a self-reported history of "spine surgery" with an "unknown level." *See, e.g.*, *id.* at 450, 452. The record also contains a pre-MRI questionnaire that asks the patient to list any past surgeries. D.E. 9 at 495. Taylor responded, "lumbar spur removal," with no additional information. *Id.* In her reply brief, Taylor explains that the surgery to remove spinal bone spurs occurred in 2010. D.E. 19 at 8. She also says this was done at Laser Spine Institute in Tampa, Florida, and "temporarily improved some symptoms." *Id.* at 17. These details were not in the record before the ALJ. It is not the case that the ALJ found "the absence of surgery . . . negate[d] disability." *Id.* at 18. Here, the ALJ's opinion noted, consistent with the record at the hearing, that Taylor had "unknown level" spinal surgery in the past. Taylor argues this past surgery demonstrates a longitudinal history of consistent, conservative treatment of her spinal pain. But the fact that the ALJ did not give more attention to this surgery from 2010 does not render the

ALJ's opinion lacking in substantial evidence. At this procedural posture, the Court is not authorized to consider evidence not before the ALJ, re-weigh it, and render a different decision.

Taylor argues the RFC should have included "manipulative restrictions" to account for Taylor's "bilateral hand limitations." D.E. 11 at 8. The ALJ noted that Taylor alleged "problems gripping with both hands." D.E. 9 at 129. The ALJ observed that treatment notes include complaints of "bilateral hand swelling, difficulty gripping with the bilateral hands due to swelling, pain, and stiffness." *Id*. at 130. The ALJ noted nurse Blackburn's observations that

> Hands revealed no tenderness, redness, warmth, or swelling. There was no atrophy, and the claimant was able to make a fist bilaterally. Grip strength was diminished when using the Odynometer for the claimant's age. However, during the physical examination, when asked to squeeze her hands, the claimant was able to do so well with a good firm grip. Hand grips were equal and graded 5/5 bilaterally. She could write with the dominant hand and pick up coins with either hand without difficulty.

*Id*. at 131. Blackburn found Taylor's ability to "carry" and push/pull heavy objects was impaired but otherwise rendered no opinion suggesting limitations associated with Taylor's hands. *Id*.

Contrary to Taylor's characterization, the ALJ did include manipulative limitations in the RFC. As stated in the opinion,

> I have also added manipulative limitations consisting of occasional overhead reaching and frequent reaching in all other directions, and occasional exposure to extreme cold. These added limitations are more consistent with the record in its entirety and the testimony of the claimant. Therefore, the findings of the medical consultants are partially persuasive.

D.E. 9 at 132. The ALJ's opinion demonstrates the ALJ was aware of Taylor's limitations with her hands. The ALJ took these limitations into account in shaping the RFC, just not to the level Taylor would have preferred. Given that the ALJ considered this issue and included at least minimal manipulative restrictions in the RFC, this issue is not so divorced from substantial evidence that the Court is at liberty to reverse.

Taylor says the ALJ failed her duty to further develop the record. D.E. 11 at 9. The record here contains well over two hundred pages of medical records, as well as a physical and psychological consultive examination, and two levels of analysis from state agency medical consultants. Taylor provides no reason why the ALJ was obligated to seek additional records or examinations aside from the hope of a different result.

Taylor argues the ALJ failed to consider the "cumulative effect" of her limitations, instead improperly treating them in isolation. D.E. 11 at 10. Here, the ALJ's opinion identified a number of severe impairments. D.E. 9 at 128. The ALJ appropriately considered these severe impairments both individually and in combination in determining Taylor's RFC and that Taylor did not have an impairment or combination of impairments that met or equaled a listing.

Taylor also seems to take issue with the amending of her alleged onset date. D.E. 11 at 7-9. She says, "Plaintiff did not concede that disability began in April 2022; rather, the onset date was amended at the ALJ's prompting based solely on perceived evidentiary gaps, not a change in Plaintiff's symptom testimony or functional capacity." *Id.* at 2.

The ALJ's opinion notes that Taylor alleged disability beginning April 30, 2018. D.E. 9 at 125. However, "The claimant, through advice of counsel, has requested to amend her alleged onset date of disability to April 1, 2022." *Id.* According to the ALJ, "At the hearing, the record was amended to reflect that the claimant is alleging disability since April 1, 2022, based on the findings on x-rays of the lumbar, thoracic, and cervical spine at Exhibit 1F." *Id.* at 129.

The hearing transcript records the relevant conversation. It begins with the ALJ asking Tyalor's attorney:

> I just need to ask you before we start, I saw that the onset date is April 30th of 2019 but there's no evidence that far than most recent. I mean the area to be seen is in 2022. So, I was wondering if you would like to request to amend the onset date

> because I really don't have no evidence. I cannot go back all the way to 2018 with no evidence.

D.E. 11 at 144. The attorney then explained that the 2018 date "more lined up" with Taylor separating from work "rather when her medical conditions started to worsen." *Id.* at 144-45. The hearing then paused so Taylor's lawyer could explain the situation to Taylor. The lawyer explained,

> the onset date on your application is back in 2018, but your medical records really don't start until 2022. And really your medical records are within, you know, the year beyond your filing date which is the most important year anyway. And so, what [the ALJ is] asking that we do is make an amendment to your onset date to match it up more with your records rather than when your work started to trail off. Would you be [amenable] to making that change just to make sure we're talking about a period of the most let's say the period of time where we have the most evidence?

*Id.* at 145. Taylor agreed, so her lawyer moved to amend the onset date to comport with the earliest documentation, "the April 2022 x-rays of her lumbar spine." *Id.* The ALJ granted the motion. *Id.* at 146. Taylor provides no authority suggesting this Court can reverse an ALJ's decision to grant the claimant's counsel's motion to amend the alleged onset date. And the Court finds no reversible error here.

One final note. The Court disregards—as waived—any new arguments raised the reply brief. Further, Taylor's reply brief is 26 pages long, plus a two-page Plaintiff's Reply Summary. D.E. 19. Joint Local Civil Rule 7.1(d) provides that replies "may not exceed 15 pages without leave of Court." Given Taylor's *pro se* status, the Court has considered this reply brief, except to the extent that it raises new issues or arguments not contained in the opening brief.

## IV. CONCLUSION

The Court being sufficiently advised, **IT IS HEREBY ORDERED THAT** the ALJ's decision is **AFFIRMED**. Plaintiff's request to remand (D.E. 11) is **DENIED**. Judgment will be entered in favor of the Commissioner by separate contemporaneous order.

This the 13th day of October, 2026.

**Signed By:**
***Hanly A. Ingram***
**United States Magistrate Judge**